JAMES LAMBIE RUSSELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Russell v. Commissioner
Docket No. 40588-86
United States Tax Court
T.C. Memo 1989-326; 1989 Tax Ct. Memo LEXIS 326; 57 T.C.M. (CCH) 865; T.C.M. (RIA) 89326; July 5, 1989; As corrected July 19, 1989 James Lambie Russell, pro se. Carol B. Reeve, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: By notice of deficiency dated July 15, 1986, respondent determined deficiencies in, and additions to, petitioner's Federal income tax as follows: Additions To Tax
Calendar Year
Deficiency
Sec. 6653(a)(l) [1]
Sec. 6653(a)(2)
1982
$ 3,228.92
$ 187.25 * 1983
2,758.63
137.93 **
*328 At trial, respondent alerted the Court to a computational error in the amount of deficiency and additions to tax for 1983, as set forth in the notice of deficiency. The correct deficiency for 1983 per respondent is $ 1,523.63; the correct addition to tax under section 6653(a)(1) is $ 76.18. After concessions, the issues for decision are: (1) Whether the statute of limitations bars the assessment and collection of the determined deficiencies and additions to tax; (2) whether petitioner failed to report his one-half share of community property gross income of $ 11,731.00 in 1983; (3) whether petitioner has failed to substantiate his one-half share of disallowed Schedule C expenses of $ 9,162.50 and $ 3,660.00 in 1982 and 1983, respectively; (4) whether petitioner is entitled to deduct certain expenses in connection with the business use of a vehicle which he did not claim on his 1982 return; (5) whether petitioner is entitled to an $ 8,000.00 theft loss deduction which he did not claim on his 1982 return; and (6) whether petitioner is liable for additions to tax under sections 6653(a)(1) and (a)(2) for 1982 and 1983. FINDINGS OF FACT Some of the facts have been stipulated *329 and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Vidor, Texas at the time the petition in this case was filed. Petitioner is a physician involved in the general practice of medicine in Vidor, Texas. In April 1981 he suffered a stroke and was left with ataxia. While petitioner was unable to practice due to his illness, another doctor (Dr. Stingzon) filled in and was paid a percentage of the office visits. In July, 1981 petitioner married his present wife, Margaret (Mrs. Russell). They filed a joint Federal income tax return for 1981. In January, 1982 petitioner returned to practice on a limited and supervised basis. Dr. Stingzon remained and rented office space from petitioner. Petitioner filed Federal income tax returns for the calendar years 1982 and 1983 on July 25, 1983 and August 16, 1984, respectively, with the Internal Revenue Service Center at Austin, Texas. He filed his 1982 return as a single person and his 1983 return as head of household. Mrs. Russell, however, filed her own returns for 1982 and 1983, but claimed joint return filing status. Petitioner reported income and expenses *330 related to professional services he performed, and Mrs. Russell reported those related to Dr. Stingzon. These inconsistent filing statuses caused respondent to examine the 1982 and 1983 returns of both petitioner and Mrs. Russell. Respondent first determined that under the community property laws of Texas, the separate returns of petitioner and Mrs. Russell for 1982 and 1983 should be combined, and then each should be allocated half of the combined income and deductions. Petitioner conceded this point at trial. Respondent computed petitioner's corrected taxable income using the married filing separate rates, which petitioner has not contested. Second, respondent determined that there were $ 11,731.00 in unexplained bank deposits, and that petitioner failed to report his share of such amount ($ 5,865.50) as gross income in 1982. Petitioner testified that the unexplained amount represents a single deposit of a matured certificate of deposit to his business account, which was used as "seed" money to finance his return to his medical practice in 1982. Third, respondent disallowed certain of the combined Schedule C deductions claimed by petitioner and Mrs. Russell in 1982 as follows: *331 Amount
Portion
Claimed
Disallowed
Office Supplies and Postage
$ 14,760.00
$ 872.00 Supplies
3,492.00
3,190.50 Utilities
7,282.00
1,259.00 Wages
78,241.00
3,841.00 Respondent also disallowed a deduction for wages of $ 3,660.00 in 1983, out of a combined total of $ 65,735.09 claimed by petitioner and Mrs. Russell. Respondent's computation of petitioner's corrected tax liability only takes into account petitioner's one-half share of deductions disallowed. The disallowed portions of deductions for wages in 1982 and 1983 represent amounts paid by petitioner to Mrs. Sarah Colburn (Mrs. Colburn). Mrs. Colburn is the mother of two of petitioner's sons. Petitioner never assumed any legal obligation to pay child support. However, he did pay his sons directly for the costs of their college educations. Mrs. Colburn would work at petitioner's office about twice a week. She handled all bookkeeping, made all bank deposits, and prepared all quarterly tax withholding forms. She was paid approximately $ 300.00 each month for her services. At trial, petitioner claimed he was entitled to deduct certain expenses paid in connection with the *332 business use of a vehicle in 1982. Petitioner separately computed, claimed and was allowed depreciation expense on the vehicle used for the trips in 1982. However, petitioner failed to claim any additional expenses paid in operating the vehicle in 1982. In 1983, however, petitioner claimed and was allowed $ 1,591.00 in actual expenses for gasoline, oil, lubrication, etc. and repairs in connection with the vehicle. Also at trial, petitioner claimed entitlement to a theft loss deduction of $ 8,000.00 in 1982. Petitioner testified that $ 8,000.00 worth of interest coupons related to revenue bonds he owned were stolen from his office in 1981. He discovered the theft in 1981. OPINION Issue 1. Statute of Limitations
Petitioner first argues that the statute of limitations bars the assessment and collection of respondent's determined deficiencies and additions to tax for 1982 and 1983. The general rule is (with exceptions not applicable here) that "the amount of any tax imposed * * * shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the *333 collection of such tax shall be begun after expiration of such period." Sec. 6501(a). The running of the period of limitations under section 6501 is suspended until 60 days after the decision of this Court becomes final, where a timely notice of deficiency is mailed and a timely petition is filed. Sec. 6503(a)(1). Petitioner filed his 1982 and 1983 Federal income tax returns on July 25, 1983 and August 16, 1984, respectively. Respondent mailed a notice of deficiency to petitioner for the taxable years 1982 and 1983 on July 15, 1986. The notice of deficiency was mailed to petitioner within three years after petitioner's 1982 and 1983 returns were filed. Accordingly, the notice of deficiency was timely, and the statute of limitations does not bar the assessment and collection of deficiencies and additions to tax determined by respondent. Issue 2. Unreported Income
The second issue for decision is whether petitioner failed to report his one-half share of community property gross income of $ 11,731.00 in 1983. Section 61(a) requires that gross income include all income from whatever source derived. Petitioner bears the burden of proving that respondent's determination *334 is in error. ; Rule 142(a). Respondent determined that there were $ 11,731.00 in unexplained deposits into petitioner's business bank account, and that petitioner failed to report his share of such amount ($ 5,865.50) as gross income in 1982. Petitioner testified that the unexplained amount represents a single deposit of a matured certificate of deposit to his business account, which was used as "seed" money to finance his return to his medical practice in 1982. Thus, petitioner argues that the deposit was from a nontaxable source. However, petitioner could not offer a deposit slip or other documentary evidence to corroborate his explanation of the source of the deposit. We find that petitioner has failed to meet his burden of proof. Accordingly, we uphold respondent's determination that petitioner has $ 5,865.50 of unreported gross income 1982. Issue 3. Schedule C Expenses
The third issue for decision is whether petitioner has failed to substantiate his one-half share of disallowed Schedule C expenses of $ 9,162.50 and $ 3,660.00 in 1982 and 1983, respectively. Deductions are a matter of legislative grace *335 and entitlement thereto must be shown by the taxpayer. . Section 162(a) provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * a reasonable allowance for salaries or other compensation for personal services actually rendered * * *." Petitioner bears the burden of proving that respondent's determinations are in error. ; Rule 142(a). Petitioner has met his burden of proving that he is entitled to deduct wages paid to Mrs. Colburn of $ 3,841.00 and $ 3,660.00 in 1982 and 1983, respectively, and we so hold. We are convinced that these amounts are not disguised child support payments as respondent seems to suggest, but instead represent reasonable compensation paid for services actually rendered by Mrs. Colburn to petitioner in his business. However, petitioner has failed to prove entitlement to the remaining $ 5,321.50 of Schedule C expenses claimed in 1982 which were disallowed by respondent. Accordingly, we uphold respondent's determination *336 disallowing such expenses. Issue 4. Operating Expenses of Vehicle
The fourth issue for decision is whether petitioner is entitled to deduct certain expenses paid in connection with the business use of a vehicle in 1982. Petitioner did not claim any such expenses on his 1982 return, and raised this issue for the first time at trial. When this issue was raised at trial, respondent did not object to the injection of a new matter not raised in the pleadings. Further, respondent had a full opportunity to cross-examine petitioner at trial. Accordingly, we find no prejudice to respondent in considering the present issue. However, the burden is on petitioner to prove entitlement to the deductions he asserts he is due. Rule 142(a). Petitioner separately computed, claimed and was allowed to deduct depreciation expense on the vehicle used for the trips in 1982. He testified on direct examination that he drove 25 miles round-trip, six times per week, from his office in Vidor, Texas to a hospital in Beaumont, Texas. In 1983, petitioner claimed and was allowed $ 1,591.00 in actual expenses for gasoline, oil, lubrication, etc. and repairs in connection with the vehicle. Petitioner *337 appears to claim that he is entitled to similarly deduct $ 1,591.00 in 1982 as an estimate of actual expenses paid, or, alternatively, some amount based upon respondent' standard mileage allowance. Petitioner was unable to substantiate his claim with a record of trips made, or with any documentation of actual expenses paid in 1982. Expenses for transportation between business locations are deductible. Sec. 162(a); . The substantiation requirements of section 274 do not apply to deductions for local transportation. , affd. without published opinion . Under , this Court may approximate the amount incurred for local transportation, "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making." Petitioner has failed to show that the amount of expenses he deducted in 1983 is representative of the amount paid in 1982. Further, in light of petitioner's limited and supervised medical practice in 1982, we do not believe *338 that he made the frequency of hospital visits to see patients which he claims. Indeed, on cross-examination petitioner responded as follows when asked if he went regularly to the hospital in 1982: "I don't know really, but I went to the hospital most days, to check what was going on. For instance, I can go to the hospital and have dinner and attend the talks at the hospital." Since we find petitioner's testimony unpersuasive, or that such trips were ordinary and necessary, we have no basis for estimating expenses which may have been paid in 1982. Respondent allowed petitioner the deduction claimed for depreciation. Petitioner has not convinced us he is entitled to more in 1982. Accordingly, we hold for respondent. Issue 5. Theft Loss
The fifth issue for decision is whether petitioner is entitled to deduct an $ 8,000.00 theft loss in 1982. Petitioner did not deduct the theft loss on his 1982 return, and raised this issue for the first time at trial. A deduction is allowed for any loss sustained during the taxable year which is not compensated for by insurance or otherwise. Sec. 165(a). A loss arising from theft is treated as sustained during the taxable year in which *339 the taxpayer discovers the loss. Sec. 165(e). Petitioner testified that the theft of the bond interest coupons occurred in 1981 and that he also discovered the loss in 1981. Thus, any theft loss which may have occurred was sustained in 1981 and not 1982. The taxable year 1981 is not before the Court. Accordingly, we hold that petitioner is not entitled to a theft loss deduction in 1982. Issue 6. Additions to Tax
The sixth and final issue for decision is whether petitioner is liable for additions to tax under sections 6653(a)(1) and (a)(2) for 1982 and 1983. Section 6653(a)(1) provides for an addition to tax of 5 percent of an underpayment where any part of such underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for an addition to tax of an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or the intentional disregard of the rules or regulations. Petitioner bears the burden of proving that respondent's determination of an addition to tax under section 6653(a) is in error. ; Rule *340 142(a). Petitioner testified and offered exhibits regarding a $ 10,051.47 Federal income tax refund check for the year 1981, which he believes was forged and cashed. Petitioner argues that since he never received his 1981 tax refund, he is not liable for the subject additions to tax. Quite clearly, petitioner is not entitled to underpay his taxes in 1982 and 1983 because he believes that he is still owed a tax refund for 1981. Accordingly, we hold for respondent. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest payable on $ 3,744.92. ** 50 percent of the interest payable on $ 2,758.63.↩